FILED
2021 Sep-15  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **)** | |
| | **)** | |
| **VS.** | **)** | **5:21-CR-181-LCB-HNJ** |
| | **)** | |
| **CHRISTOPHER WAYNE ARIVETT** | **)** | |

## MR. ARIVETT'S MOTION TO SUPPRESS EVIDENCE

The defendant, Christopher Wayne Arivett, moves to suppress evidence obtained as a result of a search warrant issued on January 16, 2019. According to the search warrant application, officers downloaded 11 files of child pornography from a particular IP address on July 8, 2018. They then waited over six months to apply for a search warrant based on that information, despite having no updated information to suggest that the devices from which the pornography were downloaded were still in the same location or that the pornography still existed on those devices. The officers' application for a warrant was based upon stale information and therefore lacked a sufficient basis for probable cause. Consequently, all evidence obtained as a result of the search warrant violates Mr. Arivett's Fourth Amendment right and should be suppressed.

### FACTS

Christopher Arivett is a United States Navy Veteran. He was indicted in June 2021 and accused of possessing images and videos containing child pornography. The images and videos were recovered from two (2) external hard drives that were examined by the Department of Homeland Security ("HSI Huntsville"). The hard

1

drives were obtained on January 17, 2019, during the search of a home located at 13295 Hidden Valley Drive, Madison, Alabama 35756 ("Hidden Valley").

On January 16, 2019, HSI Huntsville applied for a warrant to search the home located at Hidden Valley. An affidavit for the warrant provided the following details: On July 8, 2018—six months prior to the search—the Northport Police Department conducted an online investigation of the BitTorrent network, in search of individuals who share child pornography. Exhibit 1, Affidavit in Support of Search Warrant at 11-16.[1] During the investigation, they identified a device at IP address 104.8.205.18. Thereafter, the investigating officer connected directly to the device and downloaded 11 files that contained child pornography. *Id.*

Three months later, on October 9, 2018, the Joint Electronic Crimes Task Force determined that the IP address was registered to AT&T. After another month, on November 7, 2018, an investigator from the Madison County Sheriff's Office served a subpoena on AT&T, requesting all records regarding the identification of the subscriber. They determined that the IP address was registered at Hidden Valley. The subscriber was William Ewing. *Id.*

On December 7, 2018, HSI Huntsville ran a query on the address, via the State of Alabama Driver License records. Records revealed that William Ewing was a resident. On December 18, 2018 they ran a second query and learned that Christopher Arivett also listed the address on his driver's license. On January 15,

---

[1] BitTorrent in a peer to peer file sharing software. *Id.* at 23.

2019, HSI Huntsville conducted a utility check on the address and learned that the utilities were registered to William Ewing. *Id.*

A day later—more than six (6) months after identifying the IP address—officers applied for the search warrant. *Id.* The supporting affidavit was 42 pages. It included federal criminal statutes, a list of definitions for terms such as "child pornography," "computer" and "ISP," and descriptions of the 11 images. *See generally id.* It also included sections entitled "Background on Computers and Child Pornography and Online Child Exploitation," "Background on Peer to Peer File Sharing," "Law Enforcement Investigations Concerning P2P Networks" "Background on the Bittorent Network," "Background on Computers and Evidence Assessment Process in Child Pornography and Child Exploitation Investigation," and "Characteristics of Individuals Involved in Child Pornography Offenses." *Id.*

Upon execution of the warrant, officers made contact with William Ewing and his girlfriend. They told Ewing that they were there because someone at the address downloaded porn. They then showed him a picture of Mr. Arivett and wanted to know where Arivett's things were. He informed them that Arivett "briefly" rented a room from him until August 2018 and told them that some of Arivett's belongings were in two plastic storage containers in the garage. Officers seized the following devices from the storage containers: an X Box One, two 3.5' Insignia External hard drives, three 2.5' Insignia external hard drives, Samsung notebook, Gorilla USB thumb drive, Dell laptop computer, E-machine computer tower, and a box of miscellaneous documents.

Officers did not take any of Ewing's devices but reported that a "preview" of his computer and smart phone did not uncover any images of child pornography.

During the search, Mr. Ewing called Ruth Allen, Mr. Arivett's mother. She spoke directly to an agent and asked why they were searching Arivett's things. The agent told her that they had evidence that "Christopher used the internet to download porn two months ago." She told the agent that it was impossible because Arivett was incarcerated two months prior. The agent replied, "Ma'am we caught him red handed."

ARGUMENT

To properly issue a search warrant, there must be a finding of probable cause. *United States v. Ventresca*, 380 U.S. 102, 107 (1965). "A sufficient basis for probable cause for a search exists when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011) (citations and quotations omitted). In other words, "[t]he government must reveal facts that make it likely that the items being sought are in that place when the warrant issues to satisfy the probable cause standard." *United States v. Green*, 40 F.3d 1167, 1172 (11th Cir. 1994) (citations and quotations omitted). In order to establish probable cause, the information "must be timely." *Id*. "Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). Nevertheless, stale information is not fatal where the government's affidavit "updates, substantiates, or

4

corroborates the stale material." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). There are no arbitrary time limits for determining staleness. *Id*. Instead, staleness must be considered case-by-case. *Id*. The analysis should assess factors like "the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *Id*.

In cases involving child pornography, some courts have determined that the staleness analysis is "unique because persons interested in those materials are likely to hoard such images for long periods of time." *United States v. Guay*, 464 F.Supp.3d 507, 514 (2nd Cir. 2020) (quotations omitted); *Simons v. United States*, 683 Fed.Appx 882, 887 (11th Cir. 2017) ("individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials"); *United States v. Lovvorn*, 524 Fed. Appx 485 (11th Cir. 2013) ("Files on a computer are less likely than other types of contraband to disappear over time and can often be recovered even if they are deleted"); *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (explaining that sixteen-month old information in the drug trade is stale but "[w[ith respect to images of child pornography, however, the answer may be no because the images can have an infinite life span") . Notwithstanding, in *Guay* the Court explained that:

> Before inferring that a defendant is a "hoarder" for purposes of a staleness determination…courts must first find that there is probable cause to believe that a defendant is a collector of child pornography. Courts can infer that the suspect was a collector of child pornography where there are circumstances suggesting that he had accessed such images willfully and deliberately, actively seeking them out to satisfy a preexisting predilection. For example, courts can infer that a defendant is a collector where there is an extended history of receiving

> pornographic images. So too can the inference be made where there is a single incident of possession or receipt coupled with either a willful intention to view the child pornography or redistribution of it to others.

464 F.Supp.3d at 514.

Here, the search warrant application lacks sufficient information to establish probable cause that any resident or occupant of Hidden Valley was a collector of child pornography. To begin, prior to the search, officers did not know which device was on the BitTorent network, who it belonged to, or who used the device. As such, there was no individual whom they could identify as the perpetrator. Although Mr. Ewing and Mr. Arivett were suspected to be residents of the address, the search warrant application itself provides no individual knowledge of the two men which suggested that they collected or distributed child pornography. This fact distinguishes the instant case from *Simons*. Although *Simons* is similar in that the FBI was "gathering details [over a six-month period] to ensure that the correct person was identified and the proper location was searched," the defendant in *Simons* stated in a message that he had more images of child porn. *Id*. Given that, the Court concluded that "[t]his indicated that the transmission was not an isolated incident, and that Mr. Simons had additional images at his disposal." *Id*.; s*ee also Guay*, 464 F.Supp at 515 (search warrant application sets forth circumstances indicating that the defendant deliberately sent and solicited pornographic material with minor females using two Instagram names which he accessed at least 179 times during the investigation).

This case is also different from *Lovvorn*. In *Lovvorn*, the investigator had a first-hand conversation with the defendant's wife. *Id*. at 487. She informed the

investigator that she observed the defendant viewing child pornography for several years, that he masturbated while viewing child pornography, and that he viewed child pornography with a minor child present. This repeated conduct was presented to the magistrate judge in the search warrant affidavit.

In *Frechette*, the affidavit indicated that the defendant was listed on the sex offender registry and that he "was not nomadic." 583 F.3d at 377, 379. In fact, he "lived in the same house for the entire sixteen months in question." *Id*. at 379. Here, the affidavit contained no information which suggested that Mr. Ewing or Mr. Arivett had any criminal history. Furthermore, unlike in *Frechette*, Mr. Arivett was in fact nomadic. By the time the search warrant was sought, he had been incarcerated in Oregon for five months. Prior to that, he was a truck driver and lived at the Hidden Valley residence very briefly.

This case is most analogous to *United States v. Prideaux-Wentz*, 543 F.3d 954 (7th Cir. 2008). In *Prideaux-Wentz*, the agent submitted a search affidavit which explained that his investigation was based on complaints from NCMEC (National Center for Missing and Exploited Children) regarding pictures containing child pornography that were uploaded to eight Yahoo! e-groups. *Id*. at 956. The 40-page affidavit included general information about child pornography, statutes and definitions, background on the officer's training, and information regarding the habits of child pornographers. It explained that over a five-month period, NCMEC received 19 tips that the user—whose email address the agent identified—uploaded 69 images of child pornography or child erotica to Yahoo groups. *Id*. The affidavit

provided descriptions of each image and contained information regarding the account and subscriber. Based on this information, the magistrate judge issued a warrant two years after the last identified tip. *Id*. at 957. The Court found that "the warrant lacked probable cause because the evidence that Agent Paulson relied on in his warrant affidavit was stale." The Court reasoned that:

> [T]he warrant does not indicate when the pictures were uploaded to Yahoo! e-groups, and there is no way to discern this fact from the record… [T]he images could have been uploaded as many as two years before the Cyber Tips were received, which would mean that the information was at least four years old by the time the government applied for a warrant…[T]here is no new evidence to freshen the stale evidence.

*Id*. at 958. Like *Prideaux-Wentz*, the affidavit in this case provided numerous pages which outline general information about child pornography and the characteristics of child pornographers. However, it failed to provide the court with any information regarding when the images were downloaded onto the suspected device. There is also no indication as to whether the device was a computer (which is likely to remain at residence) or a more mobile device such as an I-pad or cell phone. The affidavit states only that on July 8, 2018, eleven (11) images were downloaded from an unknown device at the Hidden Valley residence. Without more, there is no way to determine whether those images were downloaded and/or accessed recently or years earlier. In fact, the evidence that was seized was found in a storage bin that had been packed away in the garage, suggesting that the devices had not been used for a period of time. Consequently, there is no way to determine whether the images were downloaded on a single occasion or multiple different occasions. *See United States v.*

8

*Raymonda*, 780 F.3d 105, 117 (2d Cir. 2015) (holding that "a single incident of access does not create a fair probability that child pornography will still be found on a suspect's computer months after all temporary traces of that incident have likely been cleared"). Given the lack of certainty regarding when the images were downloaded as well as the agent's failure to substantiate or update the information, the six-month-old facts were stale and thus the warrant lacked probable cause.

WHEREFORE, Mr. Arivett asks that this Court grant his Motion to Suppress.

Respectfully submitted,

Kevin L. Butler
Federal Public Defender

*/s/ Latasha L. McCrary*
Latasha L. McCrary
Assistant Federal Public Defender
200 Clinton Avenue West, Suite 503
Huntsville, Alabama 35801
256-684-8700 (t) 256-519-5948 (f)
latasha_mccrary@fd.org

CERTIFICATE OF SERVICE

I certify that on September 15, 2021, the foregoing was filed with the Clerk of Court and docketed electronically using the Court's CM/ECF system, which will provide notice to counsel of record.

*/s/ Latasha McCrary*
Latasha McCrary